UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | No. 05 CR 267 |
| v. | ) | |
| | ) | Judge John W. Darrah |
| WILLIAM DENNIS | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant, William "Billy" Dennis, was convicted, after a two-day jury trial, of conspiring to commit offenses against the United States, namely, to violate certain firearm laws in violation of 18 U.S.C. § 371. Presently before the Court are Defendant's Motion for Judgment of Acquittal and Motion for a New Trial.

Defendant moves for a judgment of acquittal, arguing that the Government failed to prove his guilt beyond a reasonable doubt.

A motion for judgment of acquittal should only be granted if there is insufficient evidence to sustain the conviction. *See United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002) (*O'Hara*). The evidence is viewed in the light most favorable to the prosecution, and a conviction will only be overturned if the record contains no evidence on which a rational jury could have returned a guilty verdict. *See O'Hara*, 301 F.3d at 569-70.

At trial, Special Agent Christopher Labno, an undercover case agent, testified that he negotiated the purchase of firearms with Cruz. Labno testified that Cruz explained to Labno that Cruz and his nephew would travel to Tennessee to retrieve the firearms and transport them back to Illinois. Three audio tapes of telephone conversations between Labno and Cruz were played to the jury. In the first telephone conversation, Cruz informed Labno that he had three firearms ready to be picked up but that Cruz was not going to go to Tennessee to pick up the firearms until he had at

least five or six weapons to pick up. Cruz also informed Labno that he was going to bring his nephew, Billy, with him to Tennessee to help transport the weapons back to Illinois. Cruz informed Labno that he and Billy would take a train from Homewood to Tennessee. Cruz also indicated that Billy had rode with Cruz on a previous trip for weapons. Cruz and Labno agreed that Labno would pay for the firearms, transportation, and one-hundred dollars for each of Cruz and Billy. In the second telephone conversation, Cruz and Labno further spoke about the firearms and Labno's purchasing the train and bus tickets for Cruz and Billy. In the third conversation, Cruz and Labno confirmed the purchase of tickets for Cruz and Billy to travel to Tennessee and back to Illinois and that Labno would drive Cruz and Billy to the Homewood train station.

Agent Labno also testified that on March 22, 2005, he picked up Cruz and Defendant to take them to the train station. When Labno arrived, Defendant was carrying a duffel bag containing clothes and toiletries. During the car ride to the train station, the three individuals spoke about the firearm purchase. Upon arriving at the train station, Cruz and Defendant were arrested. After his arrest, Defendant admitted his culpability in the conspiracy while being interviewed at the Bureau of Alcohol, Tobacco and Firearm office.

A videotape recording of the car ride to the train station was played to the jury. The video showed Cruz, Defendant, and Labno discussing the trip to Tennessee for the purchase of the firearms. The video also showed Defendant's taking possession of the travel tickets and accepting payment for the trip.

Officer Matthew Gainer, another ATF agent, testified as to Defendant's post-arrest statement in which Defendant admitted his culpability in the conspiracy. The phone records of the conversations, Defendant's duffel bag and its contents, the train tickets, and photographs of the recorded currency were also admitted into evidence.

At the close of the Government's case, Defendant testified on his own behalf. In his testimony, Defendant stated that he was not guilty of the charge against him and that he had agreed to travel to Tennessee with Cruz not to obtain firearms but to steal money.

Based on the evidence at trial, a rational trier of fact could have found that Defendant conspired to unlawfully transport into Illinois a firearm purchased or otherwise obtained outside the state of Illinois and to transport a firearm in interstate commerce with knowledge and reasonable cause to believe that an offense punishable by more than one year would be committed therewith. Accordingly, Defendant's Motion for Judgment of Acquittal is denied.

Defendant also moves for a new trial, arguing that the admission of evidence pertaining to a November 2004 trip to Tennessee by Defendant deprived Defendant of a fair trial.

A court may grant a motion for a new trial "if the interests of justice so require." *See* Fed. R. Crim. P. 33. The decision to grant such a motion is within the sound discretion of the trial court. *See United States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989) (*Reed*). A new trial is in the interest of justice where "the substantial rights of the defendant have been jeopardized by errors or omissions during trial." *United States v. Kuziar*, 881 F.2d 466, 470 (7th Cir. 1989). In making this analysis, the court may not re-weigh the evidence and set aside a verdict because the court feels that some other result would be more reasonable. "The evidence must preponderate heavily against a verdict, such that it would be a miscarriage of justice to let the verdict stand." Such motions are granted

"sparingly and with caution, doing so only in those really 'exceptional cases.'" *Reed*, 875 F.3d at 113, *quoting United States v. Martinez*, 763 F.2d 1297, 1312-13 (11th Cir. 1985).

Prior to trial, the Government moved *in limine* to introduce evidence that Defendant traveled with Cruz in November 2004 to Tennessee, where Cruz purchased two firearms, as intricately related to the charged crimes or, in the alternative, pursuant to Federal Rule of Evidence 404(b) – other crimes, wrongs or acts. Defendant opposed the Government's motion and moved to exclude the testimony regarding the November 2004 trip. Initially, the Court precluded the Government from introducing the evidence of Defendant's participation in the November 2004 trip, finding that the proposed evidence was not intricately intertwined with the charged conduct or admissible under 404(b). Furthermore, the probative value was limited by its prejudicial effect.

During his opening statement, Defendant outlined his defense that he did not intend to travel to Tennessee to purchase firearms but, rather, intended to steal the gun purchase money from Agent Labno. After the opening statements, the Government moved to allow evidence of the November 2004 trip, arguing that Defendant's defense put the Defendant's intent at issue. The Court held that the Government could present the limited evidence of the November 2004 trip through the admission of the Defendant's post-arrest statements concerning his participation in the November 2004 trip.

Defendant argues that the introduction of the evidence, that was initially deemed unfairly prejudicial and to have limited probative value, denied Defendant a fair trial.

Federal Rule of Evidence 403 requires the balancing of evidence probative value against the risk of its prejudicial effect. This balancing analysis is affected by the issues and arguments presented at trial and may change based on the interjection of new or different issues and arguments

during the trial. Here, Defendant's theory of defense, *i.e.*, the absence of intent by Defendant to commit the firearms traffic offense, made the November 2004 trip probative as to that issue and tipped the balance in favor of the limited admissibility of the November 2004 trip. The Court did not err in allowing the limited evidence of the November 2004 trip. Accordingly, Defendant's Motion for a New Trial is denied.

For the foregoing reasons, Defendant's Motion for Judgment of Acquittal and Motion for a New Trial are denied.

Dated: June 7, 2006

JOHN W. DARRAH
United States District Court Judge